IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MAYRA MEJÍA GODOY

Plaintiff,

v.

MAPLEHURST BAKERIES, INC.,

Defendant.

CIVIL NO.: 09-1696 (MEL)

## OPINION AND ORDER

### I.  PROCEDURAL HISTORY

On January 23, 2009, plaintiff Mayra Mejía Godoy ("plaintiff" or "Mejía") filed a complaint in the instant case against her former employer, Maplehurst Bakeries, Inc. ("Maplehurst"), its unidentified insurance companies, Maplehurst employee Angel Ortiz ("Ortiz"), and his wife Jane Doe and their conjugal partnership.[1]  (Docket No. 3.)  Claiming, *inter alia*, that Ortiz's sexual harassment of Mejía created a hostile work environment and that Mejía was unjustly discharged in retaliation for her request that the company take disciplinary action against Ortiz, plaintiff asserts causes of action for hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, as well as under supplemental state law, to wit: Puerto Rico's Law No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29, §§ 146-151 ("Law 100"); Law No. 69 of July 6, 1985, P.R. Laws Ann. tit. 29, §§ 1321-1341 ("Law 69"); Law No. 17 of April 22,

---

[1] Plaintiff's Title VII, Law 80 and Law 115 claims against Ortiz were dismissed with prejudice on February 4, 2010.  (Docket No. 26.)  Subsequently, plaintiff moved to voluntarily dismiss all claims against Ortiz (and, by extension, Ortiz's wife), which the court granted on June 25, 2010.  (Docket No. 49.)  (See Docket No. 48, p. 3 "… the remaining defendant, Maplehurst Bakeries, Inc.") (emphasis added).

1988, P.R. Laws Ann. tit. 29, §§ 155-155m ("Law 17"); Law No. 115 of December 20, 1991, P.R. Laws Ann. tit. 29, § 194, *et seq.* ("Law 115"); and Law No. 80 of May 30, 1976, P.R. Laws Ann. tit. 29, § 185, *et seq.* ("Law 80").

Pending before the court is Maplehurst's motion for summary judgment, plaintiff's opposition, and Maplehurst's reply.  (Docket Nos. 53, 61, 74.)  Also pending before the court is plaintiff's motion to strike the majority of exhibits proffered as evidence in support of defendant's Statement of Uncontested Facts (Docket No. 53-1), filed in conjunction with defendant's summary judgment motion, as well as defendant's opposition to said motion.  (Docket Nos. 62; 75.)

## II.    MOTION TO STRIKE

Plaintiff requests that the court strike exhibits 6-22, 24-27, and 29 to defendant's Statement of Uncontested Facts (Docket Nos. 53-2, pp. 14-50; 53-3; 53-4; 53-5; 53-6, pp. 5-27; 53-7, pp. 1-13), and generally raises three objections: i) deposition transcripts do not comply with Fed R. Civ. P. 30(f)(1); ii) documents are not properly authenticated under Fed. R. Civ. 901; and iii) documents constitute inadmissible hearsay under Fed. R. Evid. 802, 803 and 807.  (Docket No. 62, ¶¶4- 5.)  In addition, plaintiff's Opposition Statement to Defendant's Statement of Material Facts (Docket No. 61-1) identifies plaintiff's specific objections to certain exhibits. (Docket No. 62, ¶ 5.)

As an initial matter, plaintiff does not articulate with specificity objections  to the following exhibits: 6, 9, 10, 11, 12, 14, 15, 16, 17, 18, 19, 21, 25, 29.  (Docket Nos. 53-2, pp. 14-21, 30-42, 45-50; 53-3; 53-4, pp. 7-12; 53-6, pp. 7-10; 53-7, pp. 1-13); (See Docket Nos. 62; 61-1.)  The court will not consider blanket objections.  Therefore, the motion to strike is DENIED as to exhibits 6, 9, 10, 11, 12, 14, 15, 16, 17, 18, 19, 21, 25, 29.

Regarding plaintiff's certification argument concerning deposition transcripts, the court finds that exhibits 26 and 27 (Docket No. 53-6, pp. 11-27) are properly certified under Fed. R. Civ. P 30(f)(1), as the record contains a certification from a notary or officer that the witness for the depositions in question was duly sworn and that the deposition accurately recorded the witness's testimony.  (Docket Nos. 74-6, p. 5; 61-3, pp. 4-5, 19.)  Therefore, plaintiff's motion regarding exhibits 26 and 27 is DENIED.

Plaintiff objects to exhibits 7, 8, 13, 22 and 24 (Docket Nos. 53-2, pp. 22-29, 43-44; 53-5; 53-6, pp. 5-6) on the ground that they are hearsay statements that fail to qualify under the business records exception because defendant did not include testimony by a custodian demonstrating that it was the regular practice to keep such records.  See Fed. R. Evid. 803(6).  Regarding exhibits 7 (Docket No. 53-2, pp. 7-27) and 8 (Docket No. 53-2, pp. 28-29), plaintiff's hearsay objection fails. Exhibit 7 consists of Mejía's internal complaint, which is a party admission and therefore not hearsay, and a cover letter from María Wicks ("Wicks"), Maplehurst's Account Manager and Supervisor, to Bruce Roach ("Roach"), Maplehurst's Human Resource Manager, detailing a conversation Wicks had with Mejía.  This document does not constitute hearsay because the author is relying on her personal recollection of events.  Likewise, exhibit 8 is a letter from Wicks to Roach memorializing her personal impressions of the episode in question, and does not rely on another declarant's statements.  Plaintiff also objects to both exhibits on the grounds that they have not been properly authenticated under Fed. R. Evid. 901.  As to exhibit 7, the court finds that the document was not properly authenticated as its referenced citation was not included in defendant's submissions.  As to exhibit 8, the court finds that the document was not properly authenticated since the citation provided – defendant's answers to plaintiff's interrogatories – is not sufficiently specific

3

for the court to determine whether the document in question was actually produced.  (Docket Nos. 75, p. 6; 74-1.)  Therefore, plaintiff's motion to strike exhibits 7 and 8 is GRANTED.

Regarding exhibits 13 (Docket No. 53-2, pp. 44-45)  and 22 (Docket No. 53-5), plaintiff's hearsay objection fails because the documents in question are not being offered to prove the truth of the matter asserted.  Exhibit 13 is a letter from Roach to Ortiz informing him that he is being formally disciplined, and is submitted to prove that fact, not to prove the truth of the underlying claims.  Exhibit 22 is a copy of Maplehurst's employee handbook, and is submitted only as proof that she had received a copy of said policy, not for the truth of the assertions within.   Therefore, plaintiff's motion regarding exhibits 13 and 22 is DENIED.

Regarding exhibit 24 (Docket No. 53-6, pp. 5-6), the document in question, an official description of the technical sales representative position, is being offered to prove the truth of the matter asserted, and therefore constitutes hearsay.  The business exception rule does not apply because defendant failed to include testimony by a custodian or another employee demonstrating that it was the regular practice to keep such records.  Therefore, plaintiff's motion regarding exhibit 24 is GRANTED.

Regarding exhibit 20 (Docket No. 53-4, pp. 1-6), plaintiff objects to the document due to a lack of authentication.  The court finds that the document was not properly authenticated since the citation provided – defendant's answers to plaintiff's interrogatories – is not sufficiently specific for the court to determine whether the document in question was actually produced. (Docket Nos. 75, p. 7; 74-1.)  Therefore, plaintiff's motion regarding exhibit 20 is GRANTED.

Thus, plaintiff's motion to strike is GRANTED IN PART AND DENIED IN PART.  The same is GRANTED with respect to exhibits 7, 8, 20 and 24 and DENIED with regard to exhibits 6, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 24, 25, 26, 27 and 29.

## III.   UNCONTESTED FACTS

Plaintiff Mejía began working for defendant Maplehurst in May 2001.  (Docket Nos. 53-1, p. 2; 61-1, p. 2; 70-1, pp. 1-2.)  As a bakery trainer serving various Pueblo and Walmart locations, Mejía essentially functioned as outside staff for those stores' bakery departments, aiding in the preparation and presentation of Maplehurst baked goods.  (Docket Nos. 53-1, p. 2; 61-1, p. 3;  70-1, Ex. 29, pp. 58:2 - 61:13.)

During the relevant period, Maplehurst's three Puerto-Rico-based employees – Mejía, Ortiz, and Carlos Ortiz (no relation) – reported to the account manager, Wicks.  (Docket Nos. 53-1, p. 3; 61-1, p. 5; 74-7, Ex. 26-a, p. 12:11-15.)

On March 12, 2007, Mejía wrote a letter to Wicks, to formally register her "total disapproval"concerning the recent conduct of Maplehurst employee Ortiz.  (Docket Nos. 53-1, pp. 3-4; 61-1, p. 6; 53-2, pp. 14-17.)  Specifically, Mejía stated that on March 7, 2007, in the presence of Wicks and Carlos Ortiz, Ortiz told Mejía that the next time she visited one of their worksites – the Walmart at Escorial Plaza –  she should give the bakery manager a "big hug and a kiss ..., so she keeps her tranquility."  Id.  (See Docket Nos. 74-6, Ex. 26-a, pp. 44:3-5, Ex. 28-a, p. 11:18-22.)[2] Further, on March 9, 2007, alluding to the fact that Mejía had spent the entire previous day at the Escorial location after only being scheduled to work there during the morning, Ortiz stated that the

---

[2]Whether this incident involved additional comments or not is in dispute and shall be discussed below.

bakery manager must have "ma[de] it good for [her.]"  (Docket Nos. 53-1, pp. 3-4; 61-1, p. 6; 53-2, pp. 14-17.)  Mejía went on to state that the episode "offend[ed]," "defame[d]," and made her "angry" to have to tolerate a "hostil [sic] environment." Id.  Wicks thereafter contacted Ortiz and instructed him to cease making vulgar or potentially offensive speech in the workplace.  (Docket Nos. 53-1, p. 5; 61-1, pp. 9-10; 74-6, Ex. 27-a, pp. 29:21-30:12.)

On May 2, 2007, Mejía wrote a letter to Wicks expressing her "disappointment" at Wicks' reaction to Mejía's March 12th letter.  (Docket Nos. 53-1, p. 5; 61-1, p. 10; 53-2, pp. 30-31.)  In addition to general complaints about an "environment in which [she] feel[s] harassed and retaliated [against]," Mejía specifically questioned a new requirement that she report to Ortiz on a daily basis, leading her to feel she was being "monitored in an unfair and discriminatory way."  Id.

On June 28, 2007, Mejía filed a charge before the Antidiscrimination Unit of the Puerto Rico Department of Labor and Human Resources ("ADU"), a copy of which Maplehurst received on July 9th.  (Docket Nos. 53-1, p. 9; 61-1, p. 17; 70-1, pp. 8-19.)  In addition to recounting the Escorial episode, the letter also stated that this "situation" with Ortiz had also occurred prior to March 2007, in the presence of Wicks and/or Carlos Ortiz.  Id.  Specifically, the letter stated that Ortiz's "sexual jokes and comments in bad taste" began in March or April 2005, and referenced an episode in December 2005 during the company's annual meeting in Florida where Ortiz, in the presence of Wicks and Carlos Ortiz, invited plaintiff to go to bed with him so he could show her "what a real man was."  Id.  Ortiz told plaintiff that they were "going to tear each other to pieces in bed."  Id.  Mejía responded that Ortiz was "crossing a line of familiarity."  Id.  Further, Mejía claimed in the letter that she was the subject of retaliation after submitting her report to Wicks.  Id.

6

On or about June 29, 2007, Human Resource Manager Roach formally disciplined Ortiz and notified Mejía by letter.  (Docket Nos. 53-1, p. 6; 61-1, p. 16; 53-2, pp. 43-44; 53-1, p. 8; 61-1, p. 16; 53-3, pp. 1-2.)  The letter stated that Roach's investigation had concluded that Ortiz had acted in a manner "not consistent with Company policies," that the company had taken "appropriate disciplinary action" and will "take steps to ensure that this conduct does not happen again." Id.  The letter further stated that to "minimize" her contact with Ortiz, Mejía would now report directly to Wicks, and that Dennis Currens ("Currens"), the Vice President for National Accounts at Maplehurst, would address all Puerto Rico employees collectively regarding the company's policies, including sexual harassment. Id.  Currens did so on July 12, 2007.  (Docket Nos. 53-1, p. 10; 61-1, p. 19; 53-3, pp. 32-35.)

On October 26, 2007, Mejía was discharged from Maplehurst.[3]  (Docket Nos. 53-1, pp. 10-11); 61-1, p. 20; 53-4, pp. 7-12.)  Following Mejía's termination, Maplehurst has not hired any employees in Puerto Rico.  (Docket Nos. 53-1, p. 11; 61-1, p. 21; 74-6, Ex. 25-a, pp. 66:17-21.)  The instant case was filed on July 23, 2009.[4]  (Docket No. 3.)

## IV.   LEGAL ANALYSIS

### A. Summary Judgment Standard

Summary judgment may be entered only if "the pleadings, depositions, answers to

---

[3]Plaintiff alleges that she was terminated in retaliation for filing her March 12th internal complaint and for filing a grievance before the ADU. (Docket No. 3, pp. 10-11.)  Defendant contends that Mejía was terminated after Maplehurst had to institute layoffs when one of its largest accounts, Pueblo Supermarkets, declared bankruptcy. (Docket No. 53, p. 17.)

[4]A Notice of the Right to Sue was issued by the Equal Employment Opportunity Commission ("EEOC") on July 1, 2009.  (Docket Nos. 3, p. 3; 9, p. 2.)  The present complaint was filed within 90 days of the EEOC notice.  (Docket Nos. 3, p. 3;  9, p. 2.)

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party.  A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52. (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)).  The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In order to defeat a properly supported motion for summary judgment, the opposing party must present more than a mere scintilla of "definite, competent evidence" demonstrating that a trial-worthy issue exists. Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994) (quoting Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1993)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Suárez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000). For issues where the opposing party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." Suárez, 229 F.3d at 53.

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).  The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citing Rossy v. Roche Prod.,

Inc., 880 F.2d 621, 624 (1st Cir. 1989)). However, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be)." Greenburg v. P. R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987); see also Mulero-Rodríguez v. Ponte, Inc., 98 F.3d 670, 677 (1st Cir. 1996) (reversing summary judgment and emphasizing that "determinations of motive and intent . . . are questions better suited for the jury" (quoting Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 34 (1st Cir. 1990)).

### B. Plaintiff's Hostile Work Environment Claim

Title VII prohibits sex-based discrimination that creates a hostile or abusive work environment. Billings v. Town of Grafton, 515 F.3d 39, 47 (1st Cir. 2008). To prevail on a claim of hostile work environment due to sexual harassment under Title VII, a plaintiff must demonstrate:

> (1) that she is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

Forrest v. Brinker Int'l Payroll Co., 511 F.3d 225, 228 (1st Cir. 2010) (quoting Crowley v. L.L. Bean, Inc., 303 F.3d 387, 395 (1st Cir. 2002)).

A hostile work environment is created when an employer requires an employee "to work in a discriminatorily hostile or abusive environment." Crowley, 303 F.3d at 394 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). The point at which a work environment becomes hostile or abusive does not depend on any "mathematically precise test." Harris, 510 U.S. at 22. Rather, a

court must look to "the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is threatening or humiliating, or merely an offensive utterance; and whether it unreasonably interferes with the employee's work performance." <u>Rivera-Rodriguez v. Frito Lay Snacks Caribbean</u>, 265 F.3d 15, 24 (1st Cir. 2001) (citation omitted). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not create a hostile work environment." <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998).

Defendant argues that plaintiff's hostile work environment claim must fail because, among other things: i) many of the alleged comments are time-barred since they occurred more than 300 days prior to the filing of plaintiff's grievance with the ADU, and ii) the workplace was not "permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Harris</u>, 510 U.S. at 21.  (Docket No. 53, pp. 7-12.)  Plaintiff further argues that even if plaintiff can establish a *prima facie* case, she is barred from recovery under the <u>Faragher</u> defense. (Docket No. 53, pp. 12-13.)

<u>Timeliness</u>

Plaintiff alleges that Ortiz's discriminatory conduct began as early as March or April 2005 (Docket No. 70-1, pp. 8-19), and the record supports Mejía's claims regarding a December 2005 incident.  (Docket Nos. 61, p. 10; 61-5, Px. 4, p. 44:11-45:3.)  Defendant counters that recovery based on discriminatory comments made by Ortiz to Mejía before May 16, 2006 – three hundred (300) days prior to the date plaintiff filed an administrative charge before the ADU on June 28, 2007 – is time-barred, and that any prior incidents should not be considered.  (Docket No. 53, pp.10-12.)

The Supreme Court in AMTRAK v. Morgan specifically rejected this argument, holding that while a hostile work environment claim is composed of a series of separate acts, as long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability" under the continuing violation doctrine.  AMTRAK v. Morgan, 536 U.S. 101, 117 (2002).  Cf. Alvarez v. Delta Airlines, Inc., 319 F. Supp. 2d 240, 247 (D.P.R. 2004) (continuing violation doctrine held not to apply to hostile work environment claim where incidents were of such serious character that any reasonable person in employee's situation would have realized that she had a substantial claim under the law) (citing pre-Morgan cases).

Following the December 2005 incident, the record is silent as to any specific incidents of harassment until March 2007.[5]  (Document Nos. 61, p. 12;  61-6, Px. 5, pp. 43:1-14; 53-2, pp. 14-17.)  While it is a close issue as to whether the approximately 14-month gap between those two incidents defeats the continuing violation doctrine, precedent from other circuits or districts tends to suggest that it does not.  See Hamera v. County of Berks, 248 Fed. Appx. 422, 424 (3d Cir. 2007) (given the four-year gap between the allegedly discriminatory comments, Third Circuit affirmed district court finding that plaintiff failed to pose a genuine issue of material fact under a continuing violation theory and held that earlier conduct was not actionable); Lesko v. Clark Publr. Servs., 904 F. Supp. 415, 420 (M.D. Pa. 1995) (continuing violation doctrine found not to apply where "roughly two years between the first and second alleged incidents of sexual harassment indicate[d] that they were separate and distinct."); but see Collins v. Cohen Pontani Lieberman & Pavane, 2008 U.S. Dist.

---

[5] In her deposition, plaintiff does make the conclusory allegation that Ortiz would engage in "vulgar and sexual" jokes "every time" Mejía, Ortiz, Wicks, and Carlos Ortiz got together during March and September of each year for a Walmart presentation.  (Docket No. 61-8, Px. 7, pp. 40:1-41:16.)

LEXIS 58047, *21 fn. 18 (S.D.N.Y. July 30, 2008) (for Title VII-like claim, one-year gap does not defeat a continuing violation claim if the acts before and after the gap are part of the same unlawful practice). Therefore, the court will consider, for purposes of this motion, evidence on the record regarding Ortiz's conduct towards Mejía from as early as December 2005.

Severity and Pervasiveness

Defendant asserts that the harassing incidents plaintiff cites are not sufficiently severe to create a hostile work environment claim. (Docket No. 53, p. 7.) Plaintiff, however, has submitted evidence on the record concerning the following allegations, which defendant disputes:[6]

(i)     In December 2005, when Mejía, Ortiz, Wicks and Carlos Ortiz were in Ortiz's room one night during the company's annual meeting in Florida, Ortiz leaned on the bed and told Mejía: "Come over, [Mejía], I'm going to show you what a real man is." (Docket Nos. 61, p. 10; 61-5, Px. 4, p. 44:11-14.) Ortiz then said: "Leave me here with [Mejía] and you'll find this bed in pieces tomorrow." (Docket Nos. 61, p. 10; 61-5, Px. 4, pp. 44:24-45:3.)

(ii)    On March 7, 2007, Ortiz told Mejía in the presence of Wicks and Carlos Ortiz: "[Mejía], show up at ... Walmart Escorial, and when you get there give a big hug, a kiss and grab [the bakery manager's] butt so that [she] will calm down." (Document Nos. 61, p. 12; 61-6, Px. 5, pp. 43:1-14; 53-2, pp. 14-17.)[7]

---

[6] Carlos Ortiz's testimony generally contradicts Mejía's entire account; he states that he never heard Ortiz make any comment to Mejía that was "unacceptable pursuant to the policies at Maplehurst." (Docket No. 74-6, Ex. 28-a, pp. 11:23-12:7.) On the other hand, Wicks states that she could not recall any time that Ortiz made any "unacceptable" comments. (Docket No. 74-6, Ex. 26-a, pp. 44:13-23.)

[7] Wicks and Carlos Ortiz specifically dispute that Ortiz told Mejía to "grab [the bakery manager's] butt." (Docket Nos. 74-6, Exhibit 26-a, pp. 44:3-5; 74-6, Ex. 28-a, p. 11:18-20.)

(iii)    On March 9, 2007, alluding to the fact that Mejía had spent the entire previous day at the Escorial location after only being scheduled to work there during the morning, Ortiz said to her in front of Wicks: "[the bakery manager] must be doing [you] pretty good." (Docket Nos. 61, p. 12; 61-6, Px. 5, p. 50:4-51:1.)

(iv)    In March 2007, Ortiz told Wicks: "María, the thing is that now I like women who smoke and drink because they're easier to take to bed and you can give it to them in the front and in the back."[8] (Docket Nos. 61, p. 12; 61-6, Px. 5,  p. 60:4-19.)

(v)    In March 2007, while discussing a movie about infidelity with Carlos Ortiz and Wicks, Ortiz said in Mejía's presence: "those women ... need a black man who's[sic] pinus [sic] is the longest so she can put something in its head and she can bite it."  (Docket Nos. 61, p. 12; 53-2, p. 34.)

(vi)    In May 2007, Ortiz told Mejía: "any man who went to bed with [you] would need a gallon of vinegar to soften [you] up."[9]  (Docket Nos. 61, p. 12; 61-7, Px. 6, p. 5:4-21.)

---

[8]It is unclear from the record before the court whether plaintiff was present for comment (iv) and if not, how she became aware of it.

[9]Furthermore, plaintiff has submitted testimony regarding two additional comments, but failed to provide citation to the record as to when they were made:
- Ortiz asked Mejía in the presence of Carlos Ortiz whether her hands hurt like a female employee from another company, while placing his hand on his genital area and then mimicking a woman masturbating. (Docket Nos. 61, p. 13; 61-6, Px. 5, p. 22:9-20.)
- Referring to a Salinas female employee, Ortiz told Wicks: "[t]hat broad has a face and a mouth like she likes to suck cock.  All women who have that type of mouth are cock suckers." (Docket Nos. 61, p. 12; 61-6, Px. 5, p. 13:9-18.)

The court will not speculate as to when these comments occurred and therefore will not consider them for purposes of this motion.  Furthermore, it is unclear if Mejía was even present during the second of these comments.

Regarding the pervasiveness of the alleged harassment, defendant argues that the sporadic nature of Mejía's and Ortiz's interactions did not allow for any alleged misconduct to permeate the workplace.[10]  (Docket No. 53, p. 8.)  The record, however, is far from clear on this issue. (Docket Nos. 53-1; 61-1; 74-7.)  Defendant points to Mejía's own testimony stating that while assigned to the Pueblo account, she only worked together with Ortiz for "re-openings" or "special occasions," such as holidays.  (Docket No. 53, p. 8; 70-1, Ex. 29, pp. 68:12-69:1.)  Although plaintiff correctly points out that this testimony only characterizes Mejía's interactions with Ortiz while she was assigned to Pueblo, plaintiff also fails to establish on the record any more regular contact with Ortiz. For instance, while plaintiff claims that she interacted with Ortiz and Carlos Ortiz on Mondays for weekly meetings and several times during the week depending on work schedules, the evidence she cites does not demonstrate that. (Docket Nos. 61, p.11; 61-5, Px. 4, p.24:11-21; 67-1, Px. 3, p.67:12-23).

An examination of the evidence as a whole shows that plaintiff's case appears to have a stronger footing on the severity than on the pervasiveness of the alleged harassment.  Under these circumstances, the court finds there is a material issue of fact best left to the jury as to whether Ortiz's conduct created a "workplace permeated with discriminatory intimidation." Harris, 510 U.S. at 21.  See Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 102 (2d Cir. 2010) (vacating district court's grant of summary judgment for defendant on hostile work environment claim where, over course of seven months, supervisor made approximately six sexual comments and, on multiple occasions, grabbed plaintiff and other women around the waist, tickled them, and stared as if he were

---

[10]While plaintiff has given sworn testimony that Ortiz made harassing comments "every time" he, Mejía, Carlos Ortiz and Wicks worked together in March and September of each year (Docket No. 61-8, Px. 7, pp. 40:1-41:16), the court will ignore "conclusory allegations" for purposes of this motion.  See Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

mentally undressing them.  Supervisor remarked that he wanted to suck on or massage breasts and announced over the loudspeaker during two final boarding calls that two female employees had previously worked in sexually provocative professions).

Employer Liability

Addressing the issue of employer liability, defendant maintains that even if plaintiff establishes a *prima facie* claim for hostile work environment, she is barred from recovery because i) Maplehurst exercised reasonable care to prevent and promptly correct the harassing behavior, and ii) plaintiff failed to take advantage of any preventative or corrective opportunity.  Faragher v. City of Boca Raton, 524 U.S. 775, 807 (U.S. 1998).

However, in asserting what is commonly referred to as the Faragher/Ellerth defense, defendant apparently assumes that Ortiz qualifies as plaintiff's supervisor.  In determining supervisory status, the First Circuit looks to the degree of authority possessed by the putative supervisor, particularly focusing on whether that individual has "the authority to affect the terms and conditions of the victim's employment, ... which primarily consists of the power to hire, fire, demote, promote, transfer, or discipline an employee."  Noviello v. City of Boston, 398 F.3d 76, 95-96 (1st Cir. 2005).  As an affirmative defense, defendant bears the burden of establishing Ortiz's supervisory status, yet defendant fails to submit any such facts.  (Docket No. 61-1.)  Rather, it is uncontested that all three Puerto Rico-based employees reported to Wicks, and the record reflects that Wicks, not Ortiz, exercised authority in assigning Mejía to work on the Pueblo account from July to September of 2007.  (Docket Nos. 53-1, p. 3; 61-1, p. 5; 74-6, Ex. 26-a, p. 12:11-15; 61-2, Px. 1, pp. 20:13-21:8.)  While Mejía did have to report to Ortiz following the filing of her internal complaint

– which might suggest that he functioned as her supervisor – there is no evidence before the court that Ortiz possessed the authority to hire, fire or demote Mejía. (Docket Nos. 53-1; 61-1; 74-7.) Furthermore, it was Wicks who ordered Mejía to do so. (Docket No. 61-8, Px. 7, pp. 11:10-12:4.)

Where, as here, the alleged harassment is committed by a co-worker, the <u>Faragher</u> defense is not available and the plaintiff must prove that the employer both "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate action." <u>Crowley</u>, 303 F.3d at 401. Plaintiff claims, substantiated by the record, that Ortiz made harassing comments to her as early as December 2005 in Wicks' presence. (Docket Nos. 61, p. 10; 61-5, Px. 4, p. 44:11-45:3.) No action was taken to rectify the situation until after Mejía filed her formal internal complaint in March 2007, when Wicks called Ortiz to tell him to stop making vulgar jokes or remarks. (Docket Nos. 53-1, p. 5; 61-1, pp. 9-10; 74-6, Ex. 27-a, pp. 29:21-30:12.) Plaintiff therefore satisfies her burden in raising a genuine issue of material fact regarding whether Maplehurst, through Wicks, could be found to have known or whether the company should have known about Ortiz's conduct as early as 2005, and failed to act promptly to correct it.[11]

For the aforementioned reasons, the court DENIES defendant's motion for summary judgment as to the hostile work environment due to sexual harassment claim.

---

[11] Plaintiff claims that prior to filing her written complaint in March 2007, she complained orally to Wicks, but to no avail. (Docket No. 61, p. 12). However, in support of this claim plaintiff can only cite her internal complaint, in which she states to Wicks that "you know this situation has been [sic] occurred in the past," and her own testimony which states that she "complained to [Wicks] because [plaintiff] understood that [Wicks] was the person within the company hierarchy who could stop [Ortiz.]" (Docket Nos. 61-13, p. 4; 61-6, Px. 5, p. 15:16-16:18.) "The law is clear that an employer may not stand by and allow an employee to be subjected to a course of ... sexual harassment by co-workers or supervisors. Rather, once an employer has knowledge of the harassment, the law imposes upon the employer a duty to take reasonable steps to eliminate it." <u>Clark v. UPS</u>, 400 F.3d 341, 349 (6th Cir. 2005). <u>See also</u> <u>Elvig v. Calvin Presbyterian Church</u>, 397 F.3d 790, 809 (9th Cir. 2005) ("Title VII creates a new duty upon the employer ...: an affirmative duty to prevent intentional sexual harassment by a fellow employee, if it amounts to discrimination in the workplace, regardless the lack of evidence of authorization or ratification.")

16

### C. Plaintiff's Retaliation Claim

Plaintiff asserts that after she filed an internal complaint in March 2007, Maplehurst retaliated against her by i) forcing her to work in a "sexually charged hostile and retaliatory environment," ii) subjecting her to more onerous working conditions, and iii) ultimately discharging her unjustly.  (Docket Nos. 3, pp. 8, 10-11; 61, pp. 14-17.)

Under Title VII, it is unlawful for employers to retaliate against employees who seek its protections.  42 U.S.C. § 2000e-3(a); see Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 59 (2006) (Title VII forbids employer actions that discriminate against employee because she has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing.").

To prove a *prima facie* case of retaliation under the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, plaintiff must allege that:  (i) she engaged in a statutorily protected activity; (ii) she suffered a materially adverse employment action; and (iii) the protected activity and the adverse employment action were causally connected.  Lockridge v. Univ. of Me. Sys., 597 F.3d 464, 472 (1st Cir. 2010).

Maplehurst does not dispute that plaintiff engaged in protected conduct under Title VII by filing an internal complaint on March 12, 2007 and by filing a grievance before the ADU on June 28, 2007.  (Docket No.53, pp. 18-19.)  However, Maplehurst counters that i) the record does not support plaintiff's retaliatory harassment claims, ii) the "onerous working conditions" defendant allegedly imposed do not constitute an adverse employment action, and iii) the approximately four-month gap between the filing of plaintiff's grievance with the ADU and her termination is too long

17

to establish a causal connection between the protected activity and the adverse employment action. (Docket No. 53, pp. 18-21.)

<u>Retaliatory Harassment</u>

An employer's creation or toleration of a hostile work environment, if sufficiently severe or pervasive, can qualify as an adverse employment action. <u>See</u> <u>Noviello v. City of Boston</u>, 398 F.3d 76, 88-90 (1st Cir. 2005); <u>Quiles-Quiles v. Henderson</u>, 439 F.3d 1, 9 (1st Cir. 2006) ("[t]he adverse employment action requirement may be satisfied by showing the creation of a hostile work environment or the intensification of a pre-existing hostile environment."). Logically, only conduct that occurs after plaintiff complains of discriminatory harassment is relevant for purposes of this claim. <u>See</u> <u>Henderson</u>, 439 F.3d at 8.

In this case, plaintiff only makes conclusory allegations regarding retaliatory harassment. (Docket Nos. 3, ¶ 54; 61, p. 14.) Further, there is insufficient evidence to support such a claim. Even with all inferences made in plaintiff's favor, there are (at most) three harassing comments that Ortiz made to Mejía, or in her presence, in the seven months between the filing of plaintiff's internal complaint and her termination.[12] (Docket Nos. 61, p. 12 (2), (3), and (5)). Of those, only one was directed at plaintiff specifically. (Docket Nos. 61, p. 12; 61-7, Px. 6, p. 5:4-21.) In addition, two of the three comments occurred in March 2007, and it is unclear from the record whether Ortiz said them after plaintiff filed her internal complaint, and, if so, whether Ortiz was aware that plaintiff had filed such a complaint. (Docket Nos. 61, p. 12; 61-6, Px. 5, p. 60:4-19; 53-2, p. 34.) Based on this

---

[12]In March 2007, Ortiz told Wicks: "María, the thing is that now I like women who smoke and drink because they're easier to take to bed and you can give it to them in the front and in the back." (Docket Nos. 61, p. 12; 61-6, Px. 5, p. 60:4-19.) That same month, while discussing a movie about infidelity with Carlos Ortiz and Wicks, Ortiz said in Mejía's presence: "those women ... need a black man who's[sic] pinus [sic] is the longest so she can put something in its head and she can bite it." (Docket Nos. 61, p. 12; 53-2, p. 34.) In May 2007, Ortiz told Mejía: "any man who went to bed with [you] would need a gallon of vinegar to soften [you] up." (Docket Nos. 61, p. 12; 61-7, Px. 6, p. 5:4-21.)

18

record, no reasonable fact finder could determine that plaintiff was subjected to retaliatory harassment following the filing of her internal complaint. See Colon v. Mills, 646 F. Supp. 2d 224, 252 (D.P.R. 2009) (isolated incident not "sufficiently severe or pervasive" for retaliatory discrimination claim to survive summary judgment).

Changes to Working Conditions

Plaintiff also asserts that following the filing of her internal complaint, she had to report to Ortiz, her alleged harasser, twice a day by phone and was assigned solely to work on the Pueblo account, a supermarket chain that was on the verge of bankruptcy. (Docket Nos. 3, pp. 8, 10-11; 61, pp. 14-18; 61-7 at Px. 6, 22:20 - 24:25; 61-2, Px. 1, 20:13-21:8.)  Plaintiff argues that these impositions were adverse employment actions, constituting material adverse changes to her working conditions. (Docket No. 61, p. 14.)

As an initial matter, placing an employee under stricter supervision – in and of itself – does not qualify as a materially adverse employment action.  See Marrero, 304 F.3d at 23 (secretary's permanent, lateral reassignment to work in same capacity for different boss did not rise to level of an adverse employment action where "her general job description and salary remained the same," notwithstanding the fact that she "was required to do more work, subjected to 'extreme supervision,' and forced to undergo a period of probation"); see also Lucenti v. Potter, 432 F. Supp. 2d 347, 364 (S.D.N.Y. 2006) ("[r]eprimands, threats of disciplinary action, and excessive scrutiny do not constitute adverse employment actions."); Castro v. New York City Bd. of Educ. Personnel Dir., 1998 U.S. Dist. LEXIS 2863, *21 (S.D.N.Y. Mar. 11, 1998) ("although reprimands and close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not

materially adverse alterations of employment conditions."). Therefore, plaintiff's claim that she was put under strict supervision fails to qualify as an adverse employment action.

As to plaintiff's claims regarding being assigned to work exclusively for the Pueblo account, courts define "materially adverse" actions as those that "dissuade a reasonable worker from making or supporting a charge of discrimination."[13] Lockridge, 597 F.3d at 472 (citation and quotation omitted). This is an objective test and "should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." Burlington N. & Santa Fe Ry., 548 U.S. at 71 (quotation omitted). Adverse employment actions "typically involve . . . discrete changes in the terms of employment, such as 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). Plaintiff does not allege – and the record does not substantiate – any particular way that being assigned to the Pueblo account impacted her, other than that she alleges it served as a pretext for her subsequent release. (Docket No. 61, pp. 17-19.) In fact, the record confirms that Mejía's hours (and, by extension, her earnings) were not affected by the change of assignment, and that following the closing of Pueblo supermarkets in September, plaintiff began to work exclusively for Maplehurst's other client, Amigo, doing so until her termination at a full weekly schedule. (Docket Nos. 61-1, p. 23; 74-7, p. 3; 61-22, pp. 17-27.) Therefore, without any evidence on the record of a corresponding loss of salary, position, prestige, or any other material measurement, plaintiff fails to establish that her temporary change in work schedule qualifies as an adverse employment action. See Melton v. Nat'l Dairy LLC, 2010 U.S. Dist. LEXIS 31737, *53 (M.D. Ala. Mar. 31, 2010)

---

[13]It is not clear from the pleadings whether plaintiff is putting this forth as an independent basis for adverse employment action or only as evidence that the Pueblo bankruptcy was a pretext to terminate her. (Docket Nos. 3; 61.)

(regarding disparate treatment claim, court stated that "changes in work assignments that do not cause any economic injury to the employee do not constitute adverse employment action.")

Causal Connection

Regarding plaintiff's claim that she was terminated in retaliation for filing a grievance with the ADU, defendant does not dispute that Mejía's termination qualifies as an adverse employment action or that her filing of a grievance constitutes protected conduct, but rather that too much time had lapsed to establish a causal connection between the two events.  (Docket No. 53, pp. 18-19.)

In evaluating claims of causal connection, courts first look to the temporal proximity between events.  Close temporal proximity between protected conduct and an adverse employment action may give rise to an inference of causal connection.  See Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 25 (1st Cir. 2004).  Indeed, the First Circuit has recently held that "temporal proximity alone can suffice to meet the relatively light burden of establishing a prima facie case of retaliation."  DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2008).  The court in Calero-Cerezo determined that a one month interval between protected conduct and adverse employment action is sufficient to demonstrate causal connection.  Calero-Cerezo, 355 F.3d at 25-26; see Mariani-Colon v. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 224 (1st Cir. 2007) (finding temporal proximity between June 2002 allegations of discrimination and August 2002 termination sufficient to meet prima facie burden).  On the other hand, longer periods have been found to be insufficient, on their own, to establish causal connections.  See Ramirez Rodriguez v. Boehringer Ingelheim Pharms., Inc., 425 F.3d 67, 85-86 (1st Cir. 2005)(finding two-month temporal proximity between filing of discrimination complaint and plaintiff's termination insufficient to establish a causal connection for ADEA-based retaliation claim); Castro-Medina v. P&G Commer. Co., 565 F. Supp. 2d 343, 382 (D.P.R. 2008)

(plaintiff unable to establish *prima facie* case that termination constituted retaliation where almost four months had elapsed between filing of complaint and termination); King v. Town of Hanover, 116 F.3d 965, 968 (1st Cir. 1997) (five-month lapse between complaint and disciplinary action found to be too long to establish retaliation claim where plaintiff failed to point to any other evidence demonstrating that action was retaliatory).

In the present case, there is an approximately four-month gap between June 28, 2007, the date she filed a grievance before the ADU, and October 24, 2007, when plaintiff was notified of her termination. (Docket Nos. 70-1, pp. 8-19; 53-4, pp. 7-12.) This is too long a period to establish a causal inference based solely on temporal proximity. See Calero-Cerezo, 355 F.3d at 25-26.

Lacking the benefit of that inference, plaintiff nevertheless meets the minimal evidentiary requirement necessary to establish a *prima facie* retaliation case by submitting the following facts to substantiate her claim: i) plaintiff was reassigned to work exclusively on the Pueblo account from mid-July to the end of September (when Pueblo closed), and ii) Carlos Ortiz began working as a bakery trainer (plaintiff's position) after Pueblo closed while retaining his official position as a technical sales representative.[14] (Docket Nos. 61, pp. 17-19; 61-2, Px. 1, pp. 20:25 – 21:8; 61-22, pp. 17-27; 61-2, Px.1, pp. 21:9-22:6, 23:13-24:14.) See Che v. Massachusetts Bay Transp. Authority, 342 F.3d 31, 38 (1st Cir. 2003); Rodriguez-Lopez v. Velasco-Gonzalez, 2010 U.S. Dist.

---

[14] Plaintiff also attempts to submit direct evidence of defendant's discriminatory animus, claiming that she received a call from Carlos Ortiz's wife who told her that her husband had received a call from Angel Ortiz, who told him that he had met with Currens and Wicks in California and they had agreed that they were going to "take advantage of the Pueblo transaction to fire [plaintiff.]" (Docket Nos. 61, p. 17; 61-8, Px. 7, pp. 61:24-63:20.) However, "any testimony used in support of discriminatory motive in a motion for summary judgment must be admissible in evidence," and this statement via two out-of-court declarants, Carlos Ortiz's wife and Carlos Ortiz, will not be considered by this court because it constitutes double hearsay, as it is being offered to prove the truth of the underlying assertion. Colon v. Mills, 646 F. Supp. 2d 224, 230-231 (D.P.R. 2009).

LEXIS 18101, *29-31 (D.P.R. Feb. 16, 2010) (in case where plaintiff was terminated five months after filing complaint, *prima facie* case nevertheless established where record indicated that alleged harasser was responsible for decision not to retain plaintiff's position after previously approving the funds to employ him).

Once a *prima facie* case of retaliation is established, the burden then shifts to the defendant to articulate a legitimate, non-retaliatory reason for its employment decision. Roman v. Potter, 604 F.3d 34, 39 (1st Cir. 2010). In this case, the record supports defendant's claims that plaintiff's employment was terminated due to Pueblo's closure. (Docket Nos. 53, p. 20; 53-4, pp. 8-12.) In plaintiff's letter of termination, dated October 24, 2007, Currens cites the closure of Pueblo Foods as the impetus behind defendant's reduction in force. (Docket No. 53-4, p. 8). Defendant's contention is further supported by the uncontested fact that following plaintiff's termination, defendant has not hired any employees in Puerto Rico. (Docket Nos. 53-1, p. 11; 61-1, p. 21; 74-6, Ex. 25-a, pp. 66:17-21.) Therefore, defendant has met its burden of articulating a non-retaliatory reason for plaintiff's dismissal.

The burden then shifts to plaintiff to show that "the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus." Potter, 604 F.3d at 39 (internal quotation marks and citation omitted). Here, plaintiff's claim fails as she can point to no proper evidence on the record that she was discharged in retaliation for filing a grievance with the ADU regarding Ortiz's conduct.

As to being assigned exclusively to the Pueblo account, plaintiff's theory implies that once Pueblo's stores closed, Mejía would be left without any assignments (or, at best, a reduced workload), providing justification for her dismissal. (Docket No. 61, p. 18-19.) The record

demonstrates otherwise.  While Mejía's weekly work schedule does indicate that Mejía worked exclusively at Pueblo locations from July 15th to September 30th, it also shows that following the closing of Pueblo stores at the end of September, Mejía was not left without an assignment.  (Docket Nos. 61-1, p. 23; 74-7, p. 3; 61-22, pp. 17-27.)  Instead, from the weeks of September 30th through October 21st (the week of her dismissal), Mejía was assigned to Maplehurst's other account, Amigo. Id.  Nothing on the record demonstrates how this short-term assignment gave defendant a greater justification to terminate plaintiff.  (Docket Nos. 53-1; 63-1); 74-7.)  Indeed, defendant's termination letter makes no reference to her recent work with Pueblo as justification for her dismissal.  (Docket No. 53-4, p. 8.)  Furthermore, plaintiff's work hours were unaffected by the change, and following the closing of Pueblo, plaintiff was merely assigned to defendant's other account, Amigo.  (Docket No. 61-22, pp. 24-27.)

Regarding Carlos Ortiz's conversion to the position of bakery trainer, even making all inferences in plaintiff's favor, this fact alone does not speak to defendant's discriminatory animus. An employer may exercise its business judgment to eliminate positions as part of a company reorganization or reduction in force, even if the individuals in those positions have engaged in protected activity or are members of protected groups.  See Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 422 (1st Cir. 1996).  At most, evidence of Ortiz's conversion to a bakery trainer suggests that defendant was preparing to fire plaintiff, or giving the company the flexibility to fire plaintiff if it decided to do so later.  However, this fact does not speak to the reason behind plaintiff's termination.  Therefore, plaintiff's retaliation claim fails because she has not raised a genuine issue of fact as to whether retaliation motivated her termination. See Potter, 604 F.3d at 43 (affirming

summary judgment for defendant where record indicated no evidence of pretext and retaliatory animus).

Defendant's motion for summary judgment regarding this claim is therefore GRANTED.

**D.    Pendent Law Claims.**

Premised on the same set of facts giving rise to plaintiff's Title VII claims, Mejia asserts claims under the laws of the Commonwealth of Puerto Rico.  Specifically, plaintiff brings claims under the following laws: Law 100, Law 17, Law 69, Law 115, and Law 80. (Docket No. 3, ¶ 6.)

Law 100, 69, and 17

Law 100, Puerto Rico's general employment discrimination statute and Title VII's local counterpart, seeks to prevent discrimination in employment by reason of age, race, color, religion, sex social or national origin or social condition.  P.R. Laws Ann., tit 29, § 146.  Law 69 deals specifically with discrimination and/or retaliation in employment on the basis of sex or gender.  P.R. Laws Ann., tit. 29, § 1323.  Law 17 defines sexual harassment as a type of sexual discrimination.  P.R. Laws Ann., tit. 29, § 155-155l.  Law 17, Law 69, and Law 100 work in concert to proscribe sexual harassment in the form of a hostile work environment.  Figueroa-Garcia v. Lilly Del Caribe, Inc., 490 F. Supp. 2d 193, 212 (D.P.R. 2007).

Courts have recognized that Title VII hostile work environment claims brought under Law 17, Law 69, and Law 100 are essentially the same.  See Aponte-Rivera v. DHL Solutions (USA), Inc., 2010 U.S. Dist. LEXIS 5451, *4-*5 (D.P.R. Jan. 25, 2010); see Figueroa-Garcia v. Lilly Del Caribe, Inc., 490 F. Supp. 2d 193 (D.P.R. 2007); cf. Salgado-Candelario v. Ericcson Caribbean, Inc., 614 F. Supp. 2d 151, 176 (D.P.R. 2008) ("[w]hile Law 100 prohibits conduct similar to that of Title

VII, the Puerto Rico Supreme Court has recognized that it is more plaintiff-friendly than its federal counterpart.").

Considering that this court has held above that summary judgment should be denied as to the Title VII hostile work environment claim, defendant's summary judgment motion should therefore likewise be DENIED as to plaintiff's Law 100, Law 17, and Law 69 claims.

Law 115

Law 115 protects employees that offer testimony before an administrative, judicial or legislative forum  from adverse actions by their employers.  P.R. Laws Ann., tit 29, § 194a. Mirroring the McDonnell-Douglas burden-shifting framework of Title VII retaliation claims, an employee may establish proof of a violation by demonstrating that the employee participated in an activity protected by §§ 194 *et seq*. and was sequently discharged, or threatened or discriminated against regarding her employment.  Id. at § 194a(c).  Once a *prima facie* case is established, the employer then bears the burden of providing a nondiscriminatory, legitimate reason for the employee's discharge.  Id.   An employee can then demonstrate that the proffered reason is a mere pretext.  Id.

Given that Law 115 requires the same adverse employment action showing as a Title VII retaliation claim, courts have treated the two claims the same.  See Rivera Rodriguez v. Sears Roebuck de Puerto Rico, Inc., 367 F. Supp. 2d 216, 230 (D.P.R. 2005) (finding that "[t]he evidentiary mechanism provided by Law 115 mirrors the McDonnell Douglas framework which we already addressed," court dismissed Law 115 claim on same basis it granted summary judgment on ADEA retaliation claim).

As this court has held above that summary judgment is granted as to the Title VII retaliation claim, defendant's summary judgment motion is likewise GRANTED as to plaintiff's Law 115 claim.

Law 80

Law 80 is Puerto Rico's Wrongful Dismissal Act.  It provides an employee that is discharged without just cause to receive severance pay from her employer.  P.R. Laws Ann., tit. 29, § 185a.  The act defines just cause to include "reorganization changes."  P.R. Ann. tit. 29, § 185b. In such cases, an employer must retain those employees of greater seniority, provided there are "positions vacant or filled by employees of less seniority in the job within their occupational classification which may be held by them."  P.R. Laws Ann. tit 29, § 185c.

Under Law 80, an employee's initial burden under Law 80 is to allege unjustified dismissal and prove actual dismissal.  Morales v. Nationwide Ins. Co., 237 F. Supp. 2d 147, 153 (D.P.R. 2002).  Once an employee does so, "the employer must establish by a preponderance of the evidence that the discharge was made for good cause."  See Hoyos v. Telecorp Communications, 405 F. Supp. 2d 199, 205-06 (D.P.R. 2005).

In this case, it is undisputed that defendant terminated plaintiff from her employment, effective October 26, 2007.  (Docket Nos. 53-1, pp. 10-11; 61-1, p. 20; 53-4, pp. 7-12.)  Defendant submits evidence that plaintiff's termination was due to the loss of a major account, Pueblo Foods. (Docket No. 53-4, p. 8.)  The legitimacy of the reduction in force is further supported by the uncontested fact that following plaintiff's termination, defendant has not hired any employees in Puerto Rico.  (Docket Nos. 53-1, p. 11; 61-1, p. 21; 74-6, Ex. 25-a, p. 66:17-21.)

However, plaintiff asserts – and has submitted evidence to substantiate her claims – that defendant implemented its reduction of force not with her termination in October, but with the unofficial transfer of Carlos Ortiz from the position of technical sales representative to that of bakery trainer around the time of Pueblo's closing.  (Docket Nos. 61, pp. 18-19; 61-2, Px. 1, pp.  20:25 – 22:6, 23:13-24:14; 61-22, pp. 17-27.)  Plaintiff has thus raised a triable issue of fact as to whether defendant has complied with Law 80.  Accordingly, summary judgment on this claim is DENIED.

## V.      CONCLUSION

For the reasons explained above, the motion for summary judgment submitted by defendant (Docket No. 53) is GRANTED IN PART AND DENIED IN PART:  The same is GRANTED with respect to plaintiff's i) retaliation claim under Title VII; and ii) pendant state claim under Law 115.  However, said motion is DENIED with respect to plaintiff's i) sexual harassment / hostile work environment claim under Title VII; and ii) pendant state claims under Law 100, Law 17,  Law 69 and Law 80.  In addition, plaintiff's motion to strike (Docket No. 62) is GRANTED IN PART AND DENIED IN PART.  The same is GRANTED with respect to exhibits 7, 8, 20 and 24 and DENIED with regard to exhibits 6, 9-22, 24-27 and 29.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 13th day of October, 2010.

s/Marcos E. López

United States Magistrate Judge

28